UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-22284-CIV-SEITZ
MAGISTRATE JUDGE P.A. WHITE

HORACE BEARD,                    :

      Plaintiff,          :          REPORT OF
                                            MAGISTRATE JUDGE
v.                               :

JOHN Greene, et al.,              :

      Defendants.         :
_____

## I    INTRODUCTION

In this *pro se* civil rights action, plaintiff Horace Beard has filed a complaint and amendments/supplements [DE#'s 1, 4, 7, 8, 9, 10, 11, 15, 16, 18], pursuant to 42 U.S.C. §1983, with claims for damages and equitable relief, stemming from an incident at Dade Correctional Institution ("DCI") in June 2008. He has named two DCI Correctional Officers, John Greene and Maleek Roberts as defendants.

As discussed, in a prior Report (DE#20), Beard's filings and allegations therein were difficult to understand. He therefore was afforded multiple opportunities to amend his pleadings. As noted in the Report (DE#20), despite the entry of Orders of instruction intended to help him understand what was required of him as a *pro se* litigant, Beard's attempts at filing did not serve to clarify the complaint.

The Report read, in pertinent part, as follows:

> The plaintiff names as defendants two DCI cor-rectional officers, John Greene and Maleek Roberts. The complaint and all supplemental pleadings and exhibits are difficult to understand.  The plain-tiff, who states that he is in psychiatric care, alleges generally that Greene and Roberts engaged in excessive force on June 26, 2008 by handcuffing him behind his back and beating him in his face and side.  The pleadings may also raise claims of force used on other dates, although it is not clear. He also repeatedly alleges that the defendants have threatened to send him to isolated confinement and

have tried to poison him. The request for relief
appears to ask for compensatory damages and
equitable relief.

In an effort to construe the instant pro se plead-
ings liberally, the Court has twice issued orders
directing the plaintiff to amend his complaint
clearly explain how each individual defendant
allegedly violated his constitutional rights.

The plaintiff has submitted supplemental pleadings
that do not clarify the complaint, but is apparent
that the plaintiff is unable to comprehend the
court's instructions and is unable to effectively
communicate his claims in a written complaint.

Although the pleadings may not technically conform
to the federal pleading standards, even as applied
to pro se litigants, the Undersigned finds that the
plaintiff has, to the best of his ability,
attempted to raise claims of unconstitutional use
of force and possibly endangerment that should
proceed beyond an initial screening.

(Report, DE#20, pp.1-2).

**This Cause is now before the Court upon a Motion for Summary Judgment by the defendants Greene and Roberts (DE#38),** with supporting exhibits A-F (filed at DE# 38-1), as to which the plaintiff was provided detailed instructions regarding his right to respond (Order of Instructions, DE#39). As discussed below, in some detail, the plaintiff did submit a response (DE#40, captioned "Affidavit") opposing the defendants' motion.

Before turning to discussion of plaintiff Beard's pleadings and the defendants' motion, it is noted that Beard may have abandoned this lawsuit. Although he is no longer confined at the institution, his address of record on the Court's CM/ECF docket remains Union CI (see DE#40). Beard has not filed a required Notice of Change of Address, indicating that he is currently confined at

Charlotte CI.[1] Nonetheless, because he did file a Response (DE# 50) opposing the defendants' motion for summary judgment (DE# 38), the defendants' motion is ripe for consideration, and this Report will therefore address Beards' claims and the defendants' defenses.

## II   DISCUSSION

As stated above, the gravamen of Beard's pleadings is his claim that on June 26, 2008 Greene and Roberts used excessive force against him, allegedly having cuffed his hands behind his back, and having beaten him in the face and side. As noted in the prior Report (DE#20), the defendants also allegedly threatened to send him to isolated confinement, and allegedly may have tried to poison him. There is no development of the record concerning a possible poisoning. Nor did Beard raise additional specific allegations or submit evidence with dates, names, places, and details, to allege and make clear any claim that the named defendants Greene and Roberts may have used excessive force against him on any other date. The record on summary judgment, as developed by submission of the defendants' exhibits/evidence, has shed additional light on the June 2008 events during which Greene and Roberts alleged used force against plaintiff Beard and upon an instance of segregated confine-ment of the plaintiff which stemmed from events that took place on

---

[1]     In the initial Order of Instructions (DE#5) which was entered at the outset of the lawsuit, informing Beard, as a *pro se* litigant, of basic re-quirements in the lawsuit, he was cautioned that he must promptly file a Notice of Change of Address upon each and every change in his address, so that his whereabouts are known and the Court and opposing parties will have his address for purposes of sending legal mail. That Order explicitly cautioned the plaintiff that his failure to file a required Notice of Change of Address is grounds for dismissal of the lawsuit, for lack of prosecution. (DE#5, ¶1). At commencement of the lawsuit, Beard was at DCI where the events complained of allegedly occur-red. (DE#1, p.1, ¶I). On 1/26/09 the Clerk received/docketed a Notice (DE#25, dated 1/21/09) indicating that Beard was at Zephyrhills CI. Thereafter, Beard gave Notice of his transfer to Union CI (DE#34, dated 2/22 and docketed 3/12/09). Thereafter, the aforementioned "Affidavit" (DE#40) indicated that plaintiff was at "7819 N.W. 228th Street, Rainford, Florida? 32026?;" and a copy of the corres-ponding envelope in which it was mailed identified the address as that of Union CI, which is in Raiford (DE#40, at p.3). Although as of this date [12/16/09] the Florida DOC's website (www.dc.state.fl.us), which contains public records pertaining to its inmates including Beard, indicates that Beard is no longer at Union CI, the plaintiff has not filed the required notice, indicating that he is no longer there. The Departmental records indicate that Beard is currently housed at Charlotte CI, awaiting his release from prison on or about 1/31/2010.

the day that he claims he was beaten. [The exhibits demonstrate that the incidents took place on 6/27, not 6/26/08].

### A.    The Use of Force in June 2008

### 1.    Law Pertaining to Eighth Amendment Use of Force Claims in the Prison Context

The Supreme Court has held that application of the deliberate indifference standard is inappropriate in the prison context when authorities use force to put down a disturbance by inmates. Hudson v. McMillian, 503 U.S. 1 (1992) (citing Whitley v. Albers, 475 U.S. 312 (1986)). Instead, "the question whether the measure taken inflicted unnecessary and wanton pain and suffering ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" Whitley, supra, 475 U.S. at 320-21 (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2 Cir.)).

Whether the prison disturbance is a riot or a lesser disruption, the corrections officers must balance the need "to maintain or restore discipline" through force against the risk of injury to inmates; but the Courts have acknowledged that "both situations may require prison officials to act quickly and decisively...[and] should be accorded wide ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.'" Hudson v. McMillian, supra, (quoting Whitley, supra, at 321-22); Brown v. Smith, 813 F.2d 1187 (11 Cir. 1987).

The test to determine whether a claim of excessive force rises to a constitutional level of cruel and unusual punishment involves both subjective and objective components.

The subjective component relates to whether a defendant possessed a wanton state of mind while applying force, and requires the claimant to show that the prison officers' actions were malicious and sadistic, and for the purpose of causing harm, or unnecessary and wanton pain and suffering upon the prisoner. Hudson v.

McMillian, supra, 503 U.S. at 6-7; Rhodes v. Chapman, 452 U.S. 337 (1981); Gregg v. Georgia, 428 U.S. 153 (1976); Stanley v. Hejirika, 134 F.3d 629, 634 (4 Cir. 1998); Branham v. Meachum, 77 F.3d 626, 630 (2 Cir. 1996); Bennett v. Parker, supra, 898 F.2d at 1532-33.

Thus, under the Eighth Amendment, force may be employed in a custodial setting as long as it is not done "maliciously and sadistically to cause harm," but applied in a good faith effort to maintain or restore discipline. Brown v. Smith, 813 F.2d 1187, 1188 (11 Cir. 1987); Skritch v. Thornton, 280 F.3d 1295, 1300 (11 Cir. 2002), citing Whitley v. Albers, 475 U.S. 312 (1986) (quotations omitted). The factors relevant to the determination of whether the force was used maliciously and sadistically with the purpose of causing harm include: 1) the extent  of the injury inflicted; 2) the need for force; 3) the relationship between the need for force and the amount  of  force  used; 4) any efforts made to temper the severity of a forceful response; and 5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them. Campbell v. Sikes, 169  F.3d 1353, 1375 (11 Cir. 1999); Redd v. Conway, 160 Fed.Appx. 858, 860 (11 Cir. 2005), citing Carr v. Tatangelo, 338 F.3d 1259, 1271 (11 Cir. 2003); Bennett v. Parker, 898 F.2d 1530, 1532-33 (11 Cir. 1990); Stanley v. Hejirika, supra, 134 F.3d at 634; Branham v. Meachum, supra, 77 F.3d at 630; Lunsford v. Bennet, 17 F.3d 1574, 1581 (7 Cir. 1994).

Courts have held that even simple inmate recalcitrance, in the form of refusal of verbal orders, may in appropriate circumstances justify the use of force (e.g., the application of mace, in non-dangerous amounts), to obtain inmate compliance so as to maintain institutional order, even when the inmate is in handcuffs, or locked in his cell when the chemical agent is used. See e.g. Williams v. Benjamin, 77 F.3d 756,  762-63 (4 Cir. 1996); Soto v. Dickey, 744 F.2d 1260, 1270-71 (7 Cir. 1984); Spain v. Procunier, 600 F.2d 189, 195 (9 Cir. 1979); Williams v. Scott, No. 96-2184, 1997 WL 312273, at *1 (7 Cir., June 5, 1997); Barr v. Williamsburg Co. Sheriff's Dept., No. C/A2:02-0167-22AJ, 2002 WL 32333152, at

*4-5 (D.S.C., Dec. 27, 2002); but see Vinyard v. Wilson, 311 F.3d 1340, 1348-49, n.13 (11 Cir. 2002).[2]

In short, for an inmate to prevail on a claim of excessive force he must satisfy not only the subjective component that the corrections officials acted with a sufficiently culpable state of mind, but also the objective component that he suffered some injury which was sufficiently serious in relation to the need for the application of force to establish constitutionally excessive force. It is well settled that the "unnecessary and wanton infliction of pain...constitutes cruel and unusual punishment forbidden by the Eighth Amendment." Whitley v. Albers, 475 U.S. 312, 319 (1986). Although an unjustified, brutal beating of an inmate by a guard is sufficient to state a claim under §1983, Haines v. Kerner, 404 U.S. 519 (1983); Perry v. Thompson, 786 F.2d 1093 (11 Cir. 1986); Aulds v. Foster, 484 F.2d 945 (5 Cir. 1973), not every push and shove, striking, or other use of force against a prisoner, even if it may later seem unnecessary in the peace of a judge's chambers, gives rise to an action in federal court for a deprivation of civil rights. Hudson v. McMillian, 503 U.S. 1, 9 (1992); Graham v. Connor, 490 U.S. 386 (1989); Johnson v. Glick, 481 F.2d 1028, 1033 (2 Cir.), cert. denied, 414 U.S. 1033 (1973); Bennett v. Parker, 898 F.2d 1530, 1533 (11 Cir. 1990); Spicer v. Collins, 9 F.Supp. 2d 673, 686 (E.D.Tex. 1998).

On April 26, 1996, the Prison Litigation Reform Act of 1995 ["PLRA"] was enacted. The PLRA significantly altered a prisoner's

---

[2]    In Vinyard, supra, the Eleventh Circuit, reviewing its own decisions where force and injury were held to be de minimis and not excessive, and affirming summary judgment for defendant police officer Stanfield as to uses of force against Vinyard at an arrest scene, and after arrival at the police station, and as to any resulting injuries at those two points; but reversing, in part, the district court's judgment which had granted summary judgment to officer Stanfield with regard to force used against Vinyard during the ride to jail [when Stanfield stopped the police vehicle en route, grabbed Vinyard causing bruising of her harm and breast, and sprayed her with mace in order to try to stop the intoxicated arrestee Vinyard from screaming obscenities and insults], finding that although there existed "a strong argument" that the act of grabbing and bruising Vinyard constituted de minimis force and injury, "[w]hat distinguishes Stanfield's force during the jail ride from the de minimis force and injury cases is the use of pepper spray".

right to bring civil actions *in forma pauperis*, and in pertinent part placed new restrictions on a prisoner's ability to seek federal redress concerning the conditions of his confinement.

Section 1997e(e) of the PLRA provides as follows.

> No federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

With the enactment of the PLRA the requirements relating to injury for various kinds of inmate civil rights claims, including claims relating to use of force against inmates by corrections officials, changed.

The Eleventh Circuit has interpreted §1997e(e) of the PLRA to mean that if due to the defendant's actions, a prisoner has not suffered some physical injury which is sufficient to satisfy the statutory provision in question, and the prisoner therefore cannot show anything more than mental or emotional suffering, the prisoner is foreclosed from obtaining compensatory or punitive damages even if there has been some violation of his constitutional rights.[3] The Eleventh Circuit, however, did not hold that a viable claim for nominal damages would necessarily be foreclosed under §1997e(e), even if entitlement to other damages were barred under the statute.[4]

---

[3]    When a prisoner files a complaint without a showing of more than *de minimis* physical injury, Section 1997e(e) operates to bar recovery of compensatory and punitive damages for mental and emotional injury suffered while the plaintiff was incarcerated; and in the Eleventh Circuit the §1997e(e) bar precluding recovery compensatory and punitive damages has been held to apply to constitutional claims other than those involving physical injury. Harris v. Garner, 190 F.3d 1279, 1286-87 (11 Cir. 1999), vacated in part and reinstated in part, Harris v. Garner, 216 F.3d 970, 984-85 (11 Cir. 2000) (en banc). The Court in Harris, while holding that §1997e(e) is a limitation on the damages which are recoverable, found that it does not preclude a prisoner's right to seek declaratory and injunctive relief. Harris, supra, 190 F.3d at 1287-88.

[4]    The Court in Harris, expressed no view on whether §1997e(e) would bar nominal damages which normally are available for the violation of certain "absolute" constitutional rights, without a showing of actual injury, Harris, 190 F.3d at 1288 n.9 (citing Carey v. Piphus, 435 U.S. 247, 266 (1978)), and thus

In the absence of any definition of "physical injury" in the PLRA, it has been left to the Courts to interpret the nature of the injury required. See Watts v. Gaston, No. 97-0114-CB-M, 1999 U.S. Dist. LEXIS 6593 (S.D.ALA. April 1, 1999).

In conducting inquiries relating to Eighth Amendment use of force claims the Courts have interpreted the language of §1997e(e) to require actual physical injury that is something more than de minimis injury in order to sustain a claim for relief.[5] Gomez v. Chandler, 163 F.2d 921, 924 (5 Cir. 1999) ("to support an Eighth Amendment excessive force claim a prisoner must have suffered from the excessive force a more than de minimis physical injury"); Spicer v. Collins, 9 F.Supp. 2d 673, 686-87 (E.D.Tex. 1998) (in case where the plaintiff failed to allege any physical injury when defendant officer grabbed him by arm, and alleged pain in neck, arms, and hands from handcuffing, the Court held that "In addition

---

Harris does not stand for the proposition that all actions for redress of alleged abridgement of constitutional rights are barred if there is no physical injury. The Court left open the question whether, upon a prisoner's showing that he or she had suffered the violation of some absolute constitutional right, the prisoner/plaintiff might be entitled to nominal damages (in addition to declaratory and/or injunctive relief) for redress of the constitutional tort even in the absence of physical injury. Several other circuits have reached the question regarding availability of nominal damages, and have held that [apart from any unavailability of punitive and/or compensatory damages resulting from the statutory language of §1997e(e)] prisoner plaintiffs may sue on constitutional claims and if they prevail may at least recover nominal damages. See Thompson v. Carter, 284 F.3d 411, 418 (2 Cir. 2002) (declaratory and injunctive relief, and nominal damages not barred); Searles v. Van Bebber, 251 F.3d 869, 878-80 (10 Cir. 2001) (compensatory damages barred, but nominal damages and punitive damages are not); Allah v. Al-Hafeez, 226 F.3d 247, 251-52 (3 Cir. 2000) (compensatory damages are barred, but nominal and punitive damages are recoverable); Rowe v. Shake, 196 F.3d 778, 781-82 (7 Cir. 1999) (declaratory and injunctive relief, and nominal damages not barred).

[5]      Prior to the PLRA the absence of injuries, or evidence of only minor injuries were held by the Courts to be suggestive of de minimis uses of force not rising to the level of cruel and unusual punishment. See: Norman v. Taylor, 25 F.3d 1259, 1262-64 (4 Cir. 1994)(swinging keys at inmate's face which struck his thumb did not amount to cruel and unusual punishment); White v. Holmes, 21 F.3d 277, 280-81 (8 Cir. 1994)(keys swung at inmate which slashed his ear did not rise to Eighth Amendment violation); DeArmas v. Jaycox, No. 92 Civ. 6139(LMM), 1993 WL 37501, *4 (S.D.N.Y. Feb. 8, 1993)(punching inmate in arm and kicking him in leg constituted de minimus force), aff'd, 14 F.3d 591 (2 Cir. 1993); Gabai v. Jacoby, 800 F.Supp. 1149, 1154-55 (S.D.N.Y. 1992) (shoving chair at inmate causing bruise not actionable); Neil v. Miller, 778 F.Supp. 378, 384 (W.D. Mich 1991) (backhand blow to groin not actionable).

to establishing that force was applied maliciously and sadistically to cause harm, a plaintiff must show that he suffered some injury in order to prevail on an Eighth Amendment excessive force claim," and ruled that the force used was not the sort of force "repugnant to the conscience of mankind"); Siglar v. Hightower, 112 F.3d 191, 193 (5 Cir. 1997) (inmate's alleged injury at hand of prison guards was de minimis, and thus he did not raise a valid Eighth Amendment claim for excessive use of force, nor did he show a prerequisite "physical injury" under the PLRA to support a claim for emotional or mental suffering). See: Luong v. Hatt, 979 F.Supp. 481, 485-6 (N.D. Texas 1997) (in case involving use of force against inmate by other inmates, the District Court interpreted §1997e(e) to require a specific physical injury, i.e., an injury which is an "observable or diagnosable medical condition requiring treatment by a medical care professional," in order to assert a claim for which relief could be granted for a claim of this kind).[6]

Gomez, Spicer, Siglar, and Luong notwithstanding, it is noted that, post-PLRA, in 2002, the Supreme Court, in Hudson v. McMillian, supra, held that the use of excessive physical force against a prisoner may under certain circumstances constitute cruel and unusual punishment even though the inmate does not suffer serious injury. Hudson, 503 U.S. at 5-12. It is further noted that this Circuit has held, in the Eighth Amendment context, both before and after enactment of the PLRA, that use of unnecessary or gratuitous force against a prisoner is cognizable in a prisoner civil rights suit for damages. See Bruce v. Wade, 537 F.2d 850, 853 (5 Cir. 1976) (a violation of §1983 is clearly stated by the unjustified beating of an inmate at the hands of prison officials); and see Skrtich v. Thornton, 280 F.3d 1295, 1303 (11 Cir. 2002)(stating: "By 1998, our precedent clearly established that

---

[6]     The Court in Luong defined "*de minimis*" injuries to include injuries such as "scrapes, scratches, cuts, abrasions, bruises, pulled muscles, back aches, leg aches, etc., which are suffered by free world people in just every day living for which they never seek medical professional care," which may last "even up to two or three weeks," and which can be treated by "home remedy care," with "over-the-counter drugs, heating pads, rest, etc., and the Court held that such injuries are excluded from constitutional recognition under §1997e(e). Luong, supra, 979 F.Supp. at 485-6.

government officials may not use gratuitous force against a prisoner who has already been subdued, or, as in this case, is incapacitated")(citing cases).[7]

### 2. **The Defendants' Evidence and Arguments**

In their motion, the defendants argue that plaintiff Beard fails to prove a constitutional violation, that he cannot recover under a theory of negligence, that he has failed to make a showing of a physical injury, as required by the PLRA under 42 U.S.C. §1997e(e); and that they are entitled to qualified immunity. The defendants argue that on the day in question there was no use of force against the plaintiff whatsoever, and that his complaint claiming that he was beaten is a fabrication.

In support of their motion, the defendants have submitted Exhibit A, a transcript of plaintiff's 5/26/09 Deposition (DE#38-1, pp. 1-49); Exhibit B, John Greene's Affidavit (Id., pp.50-52); Exhibit C, Maleek Roberts' Affidavit (Id., pp.53-54); Exhibit D, copies of a 6/27/08 prison Disciplinary Report ("DR") for "Spoken Threats," and documents pertaining to related prison disciplinary proceedings (Id., pp. 55-74); Exhibit E, Sergio Gutierrez's Affidavit (Id., pp. 75-76); and Exhibit F, consisting of copies of

---

[7]     The Skrtich Court cited Harris v. Chapman, 97 F.3d 499, 505-06 (11 Cir. 1996) (where prisoner, who had resisted haircut and threatened to kill the barber, was forcibly removed from his cell and beaten and restrained by a group of officers, a sixth officer's actions of snapping the prisoner's head back with a towel, slapping him in the face, and uttering racial epithets and other taunts were a constitutional deprivation, meriting award of damages by jury); Davis v. Locke, 936 F.2d 1208, 1212-13 (11 Cir. 1991) (where prisoner who attempted escape and was recaptured and placed in a dog box on a truck with his hands shackled behind his back, the action of pulling him by the ankles from the box, causing him to land on his head, causing him to suffer psychological injuries, the court held that the ongoing violation of escape had been terminated, and a jury could reasonably conclude that he posed no continuing risk of threat to the guards; Williams v. Cash - C.O.I., 836 F.2d 1318, 1320 (11 Cir. 1988) (where prisoner refused to comply with a prison guard's order to return to his cell, and prisoner alleged he was subdued and his arm was broken, summary judgment for the guard was no appropriate where the prisoner alleged that the guard purposefully broke his arm after he had ceased to resist); and Perry v. Thompson, 786 F.2d 1093, 1095 (11 Cir. 1986) (Appellate Court, finding a "square, head-on dispute of material facts," reversed grant of summary judgment in prisoner haircut case, where prisoner whose hands were cuffed in front of him, alleged he was thrown to the floor and beaten, the defendant officers' evidence was that the prisoner was shaved without incident and that medical records showed no complaint of injury on the day of the alleged beating).

pages from Beard's prison Chronological Record of Health Care, with entries between 6/13/08 and 7/11/07 (Id., pp.77-78), and copies of Physicians Order Sheets, dated 6/24, 7/11, and 7/25/08 (Id., p.79).

### 3.   Plaintiff's Deposition, Submitted by the Defendants

It is noted that the defendants, as their Exhibit A, have submitted a copy of the Plaintiff Beard's 5/26/09 deposition. Therein, in response to questions by counsel regarding the nature of the alleged beating, and injuries that he allegedly sustained, Beard stated that he was taken to a room. Officers Roberts and Pickett were present, but Pickett did not enter the room. According to Beard, Greene allegedly "took off his keys and whatever else he's supposed to have." Beard continued, stating "then Roberts in there, he told the man to take my handcuffs off." Beard allegedly was verbally challenged by the officer to hit him. Beard refused, Greene reapplied Beard's handcuffs and pushed Beard across a chair against the wall. Roberts ran back in the room after Green pushed Beard, and Greene and Roberts then allegedly beat him. When asked where he was hit, Beard responded, "On my face." When asked for a more specific answers about where he was hit, he responded, "Upper face around my cheek," and that it was the right cheek which was struck. When pressed for details about how he was hit (i.e., whether it was with an open hand or a fist), Beard responded "Well, he hit me so many times I couldn't really see, because its hard for me to see without my glasses anyway." When asked if he knew how many times he was struck, Beard responded, "No ma'am. It was a lot of times." When asked again, "do you know if it was a closed fist or open hand?" Beard added, "Well, I don't know.  But this I can say also M. Roberts, he was choking me also." In response to further questioning, Beard stated that he wasn't hit before he was pushed and fell over the chair; that the striking came first, that he was standing and was against the door when Roberts hit and choked him; that the hitting and choking went on for "about five or six or seven minutes;" and that in addition to the cheek, "they was hitting me everywhere." When asked to clarify what he meant, Beard stated, "In my stomach, upside my head." When asked if anyone

looked in the window, Beard responded that some nurses passed by and looked in the window. He further stated that "I believe they was down with the people on what the did" because I asked them for to be checked out by medical, treatment by medical...They just laughed at me." When asked if he was bleeding, Beard responded, "Partially. A little bit." When asked, in addition to the bleeding, what other injury he sustained, Beard responded, "Well, my back was injured. My side, not exactly my back but my side, I couldn't straighten up for awhile mainly, three, four months I couldn't straighten up." (See Ex.A, Depo at T/15-21). In response to further questioning about access to medical care, Beard was asked when was the next time that he got to seek the medical department for any other reasons, and he stated, "when I seen medical it was a month later." (Id., T/24).

When asked at deposition what kind of DR [disciplinary report] Roberts gave him due to the events of that day, Beard stated, "I didn't get no DR." When counsel probed further, and restated her question, asking "So he didn't write a DR against you?," the plaintiff responded, "No ma'am." (Ex.A, Depo at T/22-23).

### 4.  **Defendants' Other Exhibits**

Despite plaintiff's statement in his complaint that the events involving Officers Roberts and Greene took place on June 26, 2008, it appears they in fact occurred on June 27, 2008, and not June 26. (See Affidavits, Exs. C and D; and 6/27/08 DR and related documents, Ex.D). The defendants' exhibits establish the following.

Inmate Beard was housed on the TCU (Transitional Care Unit) at DCI; and on June 27, 2008, at about 10:00 a.m., he was yelling very loudly, calling for Officer Piggot. Officer Roberts, who was making security rounds, heard the commotion, responded to Beard's cell, and advised him that his loud yelling was causing a disturbance on the unit. Beard became agitated, and made verbal threats toward Roberts. Beard's belligerence continued, and his verbal threats toward Roberts were repeated, even after he was verbally counseled at his cell, and instructed to calm down. (Ex.C, Roberts Affid.; Ex.D, DR).

Beard asked to speak with Lt. Greene; but because Greene does not speak with inmates while they are housed in their cells, Greene requested that Beard be brought to his office, which is located on the TCU, but outside the dorm area, adjacent to the medical and metal health offices. (Ex. B, Greene Affid.; Ex. C, Roberts Affid.). Beard's cell, J1112S, is a single cell, located directly in front of the TCU Nursing station. (Roberts Affid., Ex.C). Pursuant to institutional Rules and Regulations, Beard was instructed to "cuff up" before being removed from his cell, and walked with his hands behind his back to Greene's office. (Roberts Affid.). Roberts states that Greene spoke to Beard for about 5 minutes, and then asked that he be returned to his cell. (Ex.C). Greene states that Beard had a prior history of disruptive behavior, including making threats, and kicking his door, which did not always result in issuance of a DR after counseling. In this instance, however, for his repeated threats directed at Officer Roberts on 6/27/08, Lt. Greene authorized Officer Roberts to issue Beard a DR for making spoken threats. (Greene Affid., Ex.B). Roberts states that at no time did he touch, hit, punch, threaten, or push inmate Beard. (Roberts Affid., Ex.C). Greene states that at no time did he touch, hit, punch, threaten or push Beard when he was in his office, and after he spoke to him for about 5 minutes, Beard was returned to his cell. (Ex.B, Greene Affid.). The officers' Affidavits indicate that there is a window in the door of Greene's office, but none in the wall. (Exs. B, C).

In addition to their affidavits stating that Beard was merely escorted to Greene's office, was counseled there for about 5 minutes about his disruptive behavior and threats against Roberts, and was then returned to his cell without there having been any force used against him, the defendants argue in their motion that plaintiff Beard has offered no evidence that corroborates his claim that he was beaten at Greene's office.

Review of the record reveals that the plaintiff has submitted no sworn statements or affidavits by inmates or institutional staff, who were present on the TCU and may have witnessed or heard a beating of the plaintiff Beard by the defendants on June 27, 2008.

Nor are there any such statements or affidavits by witnesses stating that they observed Beard with any injuries on that day, or in the days or weeks which followed. In addition, there are no medical records submitted by the plaintiff to suggest that he sustained any injuries whatsoever as the result of a beating by Greene and Roberts on June 27, 2008, or sought medical care for any injuries sustained as a result of any use of force used by them on that date.

The Chronological Medical Record for Beard (Defendants' Ex.F) contains no entry pertaining to him for 6/27/08. It contains entries for him on 6/13 by Dr. Poveda about the scheduling of a dermatologic consult and prescriptions for Methotrexate and Cyclosporin (DE#38-2, p.78). It contains a 6/16 entry by a Consult Coordinator (<u>Id.</u>); and it contains a 6/24 entry by a Nurse Practitioner [ARNP] concerning renewal of the Methotrexate and Cyclosporin, and pending status of the "derm consult." (DE#38-2, p.77). The next chart entries are in July, Incidental Notes on 7/1/ and 7/2 by an LPN, each stating "Chart Check Done;" and an entry by an ARNP on 7/11/08, which contains no reference to any complaint of injury to plaintiff's face, or complaint of pain or discomfort, or inability to straighten up, attributed by the plaintiff to a beating on 6/27/08. The 7/11/08 chart entry reads in its entirety, as follows: Inc[idental] Note. I/M has an abscess on his elbow & requesting antibiotics -- see orders F/u Unable to see pt today - Lockdown now." (<u>Id.</u>).

### 5.   <u>The Standard of Review on Summary Judgment and Notice Given to the Plaintiff Beard</u>

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper

> [i]f the pleadings, depositions, answers to inter-rogatories, and admissions on file, together with the affidavits, if any, show that there is no gen-uine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

In <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against

> a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (citations omitted)

Thus, in <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), the Court held that summary judgment should be entered only against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. (citations omitted). Accordingly, pursuant to <u>Celotex</u> and its progeny, a movant for summary judgment bears the initial responsibility of informing the court of the basis for his motion by identifying those parts of the record that demonstrate the nonexistence of a genuine issue of material fact. This demonstration need not be accompanied by affidavits. <u>Hoffman v. Allied Corp.</u>, 912 F.2d 1379, 1382 (11 Cir. 1990). If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence. <u>Avirgan v. Hull</u>, 932 F.2d 1572, 1577 (11 Cir.),

cert. denied, 112 S.Ct. 913 (1992). It is the nonmoving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11 Cir.1990). The non-moving party cannot rely solely on his complaint and other initial pleadings to contest a motion for summary judgment supported by evidentiary material, but must respond with affidavits, depositions, or otherwise to show that there are material issues of fact which require a trial Fed.R.Civ.P. 56(e); Coleman v. Smith, 828 F.2d 714, 717 (11 Cir. 1987). If the evidence presented by the nonmoving party is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986); Baldwin County, Alabama v. Purcell Corp., 971 F.2d 1558 (11 Cir. 1992). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11 Cir. 1990) (citing Anderson v. Liberty Lobby, Inc., supra).

Pursuant to Brown v. Shinbaum, 828 F.2d 707 (11 Cir.1987), an Order of Instruction (DE# 39) was entered, informing plaintiff Beard, as a *pro se* litigant, of his right to respond to the defendants' motion for summary judgment. The Order specifically instructed plaintiff Beard regarding the requirements under Fed.R.Civ.P. 56 for a proper response to such a motion.

### 6.   Plaintiff's Response to the Defendants' Motion for Summary Judgment

Plaintiff's sole opposition to the defendants' motion for summary judgment consists of a one page document (DE#40, at p.2), captioned as an "Affidavit," containing a single sentence, which reads, as follows, *verbatim*:

> In I hereby This date on 17 July 2009, that I
> Horace Beard B-796479-0-3219-s-cell-Is telling the
> ture About Alls this Dates did-to me on 26 June
> 2008; In that Trial is Necessary to you sees) OK
> now?"

16

("Affidavit," DE#40). The document is signed by Horace Beard with the date 17 July 2009. The statement is not taken under oath, and is not notarized. It is the general rule that such an unsworn Affidavit is not competent to raise a fact issue precluding summary judgment, see Nissho-Iwai American Corp. v. Kline, 845 F.2d 1300, 1306 (5 Cir. 1988), and as such, it is insufficient to rebut the defendants' evidentiary showings on summary judgment. There does exist a statutory exception to the rule, which permits an unsworn declaration to be substituted for an affiant's oath. But if this is done, it is mandated that the substituted unsworn statement must explicitly state that it is being made "under penalty of perjury" pursuant to 28 U.S.C. §1746, and it must be verified to be "true and correct." Id., at 1306; and see West v. Higgins, No. 08-11309, 2009 WL 2993823, at *2, (11 Cir. Sept.21, 2009), and Gordon v. Watson, 622 F.2d 120, 123 (5 Cir. 1980)(citing 28 U.S.C. §1746). Just as is true for an unsworn affidavit, a document which does not meet the requirements of Fed.R.Civ.P. 56(e) or 28 U.S.C. §1746, is to be disregarded by a court in conjunction with its review of the record in consideration of a defendant's motion for summary judgment. Nissho-Iwai American Corp., supra, 845 F.2d at 1306-07. Although Beard's Affidavit dated July 17, 2009 includes words to intended to state that he is telling the truth, the document, as drafted, is not compliant with the specific requirements of 28 U.S.C. §1746, and in fact did not even cite that statutory provision. In sum, Beard's "Affidavit" is neither suffices to serve as a sworn affidavit, or a declaration under §1746.

## 7.  Analysis

The defendants, through their exhibits, have submitted competent evidence to establish that after an incident which merited the issuance of a prison disciplinary report to plaintiff Beard on June 27, 2008, Beard was escorted, in handcuffs, to and from Greene's Office, where Beard was counseled by Greene in Roberts' presence, without incident. The defendants establish through the evidence proffered by way of their exhibits, including their own affidavits, that no force was used against Beard. They further

demonstrate, through copies of plaintiff's chronological medical record, for a period of time beginning 2 weeks before and extending until 2 weeks after the alleged incident, that the plaintiff had access to medical care, and that although he was seen for an unrelated matter during the period after the date of the alleged beating, there was no mention to medical staff, reflected in his medical chart, that he was beaten on or about 6/27/08, so as to cause bleeding about his face, and so as to cause injury to his side or back which, according to the plaintiff, rendered him unable to stand up straight for a period of 3 to 4 months. There are no witness affidavits or even names of potential witnesses offered by the plaintiff, to substantiate that he was beaten, and sustained injuries at the hands of the defendant officers Greene and Roberts.

Although the plaintiff's answers to questions at deposition contain his statements that he was beaten, the deposition transcript was submitted by the defendants. The plaintiff has not himself submitte the deposition testimony, nor has he incorporated it by reference into his unsworn one-sentence response in which he merely states that he is telling the truth. Even if the plaintiff had submitted and relied upon his statements at deposition, it appears in this case that it would not have been enough to stave off the defendants' motion for summary judgment.  The Eleventh Circuit has held that "[c]onclusory, uncorroborated allegations by a plaintiff in an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well supported summary judgment motion." West v. Higgins, No. 08-11309, 2009 WL 2993823, at *2, (11 Cir. Sept.21, 2009), citing  Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11 Cir. 1990).

Here, Beard, the non-movant, fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986), namely, that the defendants used excessive force against him, and caused him injuries at DCI on or about June 27, 2008.

As to the claim of use of excessive force, it is apparent that both defendants are therefore entitled to summary disposition of the complaint, in their favor.

### B.  Plaintiff's Claim Regarding Threatened Confinement

As noted supra, the prior Report construed the complaint as possibly raising a claim that plaintiff Beard was threatened by Roberts with isolated confinement. The record demonstrates that confinement was not threatened, it was an actuality. As noted above, Beard, at deposition, stated he did not receive a DR as a result of the events which are the subject of this lawsuit. That statement, however, is belied by the defendants' exhibit D, which demonstrates that not only was Beard issued a DR for a Rule 1-3 violation [Making Written or Spoken Treats], but in the resulting prison disciplinary proceeding he was found guilty, and sentenced to 30 days disciplinary confinement, with no loss of gain time. (Defendants' Ex.D).

### 1.  Law Relating to Due Process And Prison Disciplinary Proceedings

In order to state a claim under §1983, there must be a violation of the Constitution. Parratt v. Taylor, 451 U.S. 527, 535 (1981) (overruled in part on other grounds not relevant here, by Daniels v. Williams, 474 U.S. 327, 330-31 (1986)).

The Due Process Clause of the Fourteenth Amendment protects against deprivations of "life, liberty, or property without due process of law;" and therefore for the plaintiff to demonstrate that he suffered a due process violation, he must show that he was be deprived of "life, liberty, or property," Wolff v. McDonnell, 418 U.S. 539, 556 (1974).

In 1974, the Supreme Court enunciated the minimal procedural due process protections which are to be afforded to a prisoner in prison disciplinary proceedings: 1) advance written notice of the claimed violation; 2) a written statement of the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken; and 3) an opportunity to call witnesses and present

documentary evidence in defense, unless this would be unduly hazardous to institutional safety or correctional goals.  Wolff v. McDonnell, 418 U.S. 539, 563-66 (1974).

Two decades after Wolff, the Supreme Court in Sandin v. Conner, 515 U.S. 472 (1995) revisited this area of the law, and made clear that there are two circumstances under which a prisoner [who has already been deprived of his liberty by virtue of his incarceration] may be further deprived of his liberty so that due process is required.  Bass v. Perrin, 170 F.3d 1312, 1318 (11 Cir. 1999).  As noted by the Eleventh Circuit in Bass v. Perrin, following the landmark decision in Sandin v. Conner, the two instances where an inmate can claim a protected liberty interest under the due process clause are: 1) when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court; Bass v. Perrin, supra at 1318 (citing Sandin, supra, at 484; and also citing Vitek v. Jones 445 U.S. 480, 492-93 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital)); and 2) where the state has consistently given a certain benefit to prisoners [e.g. by statute or administrative policy], and the deprivation of that benefit - "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Bass v. Perrin, supra at 1318 (citing Sandin, supra at 484; and further citing Wolff v. McDonnell, supra, 418 U.S. 539, 558 (1974) (prisoners may not be deprived of statutory "good time credits" without due process)).

The Eleventh Circuit noted in footnote 9 of its opinion in Bass v. Perrin, that although it had held in Dudley v. Stewart, 724 F.2d 1493, 1497-98 (11 Cir. 1984) that the Due Process Clause protects only those liberties created by the state, the Supreme Court in Sandin, 515 U.S. at 484, had made clear that in some situations the Due Process Clause applies "of its own force."

The Eleventh Circuit, following Wolff, has recognized both before and after Sandin that the Florida Administrative Code affords prisoners a liberty interest to remain in the general prison

population. <u>See</u>: <u>Sheley v. Dugger</u>, 833 F.2d 1420, 1424 (11 Cir. 1987) (case involving long term close management); <u>Adams v. Brierson</u>, 752 F.2d 546 (11 Cir. 1985) (case involving administrative confinement); <u>Bass v. Perrin</u>, <u>supra</u>, 170 F.3d at 1318 (citing <u>Sheley</u>, <u>supra</u>).

It is now clear that it is only when an alleged deprivation of liberty is found to fall into one of the two aforementioned categories contemplated by <u>Sandin</u>, that due process is required.

## 2.   **Analysis**

### **Due Process and the Prison Disciplinary Proceeding**

The plaintiff was not deprived of life or property when placed in Administrative Confinement, between the time his DR for the 1-3 violation was issued by Officer Roberts on 6/27, and the date on which he was convicted of the DR and sentence to DR [Disciplinary Confinement], and therefore under the constitution he is entitled to due process only if he was deprived of "liberty" within the meaning of the Fourteenth Amendment. <u>See</u> <u>Wolff</u> and <u>Sandin</u>, <u>supra</u>.

The record demonstrates that where the plaintiff had a prison disciplinary proceeding, and was sentenced to a short period of disciplinary confinement (30 days), he was not deprived of due process. Although the plaintiff Beard has stated that he did not receive a DR, the Defendants' evidence, which is not rebutted by Beard at summary judgment, establishes that he did in fact receive a DR for making verbal threats against Officer Roberts on June 27, 2008, and that a prison disciplinary proceeding was held, in conjunction with which he was afforded the minimal procedural due process protections which were contemplated by the Supreme Court in <u>Wolff</u>.

Defendants' exhibits show that Beard was informed why he was being segregated, and the prison disciplinary proceeding documents

demonstrate that he was able to express his views in writing and at his hearing, and to have witnesses.

In this case, it is amply clear that, as to Beard, there was no due process violation because the alleged restriction on his liberty interest in remaining in the general inmate population (temporary placement in AC -- with limited restrictions on privileges, and a similar placement on DC for a short period of time), does not fit in either category of cases contemplated by Sandin.

The record also shows that plaintiff Beard was afforded due process, insofar as he was advised in writing during the prison disciplinary proceedings that he had the right to appeal (Ex.D, DE#38-1, p.58, last paragraph Re right to Appeal).

The sentence imposed, under which Beard was confined to DC for a month, did not include the taking of gain time.

Clearly, Beard's temporary confinement on DC status was not so severe as to essentially exceed the sentence imposed upon him, and therefore his claim does not come within the first category of cases identified by the Supreme Court in Sandin as requiring due process. The question therefore becomes whether Beard's placement in DC for 30 days at DCI fell into the second category identified by the Court in Sandin, i.e., where the deprivation of a benefit conferred by the state "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

Plaintiff Beard has not alleged facts, nor do the defendants' filings in the summary judgment proceeding contain evidence that the conditions of confinement Beard encountered during his relatively short one month in DC imposed an "atypical and significant hardship on him in relation to the ordinary incidents of prison life," Sandin v. Conner, supra, at 515; Bass, supra, at 1318.

Beard's 30 day confinement on DC is no more severe than the facts confronted by the Court in Sandin v. Conner. In Sandin, the

22

Supreme Court, reviewing a case in which inmate Conner sued Hawaii prison officials under §1983 for allegedly being denied due process during a disciplinary hearing before he was sentenced to disciplinary confinement for thirty days, concluded that such a segregation as a form of punishment was not a dramatic departure from the ordinary conditions of incarceration. Sandin v. Conner, supra, 515 U.S. at 485-86. The Court held that "the discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." Sandin, supra at 486. The Court in Sandin, found that unlike a situation in which there has been a loss of gain time or good time credits in disciplinary proceedings, which was at issue in Wolff v. McDonnell, supra, disciplinary confinement in and of itself does not implicate due process because "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." Sandin, supra, at 485. It is clear that an inmate's placement in confinement for limited periods of time is something that this country's inmates, including Florida prisoners, routinely face; and it cannot be said that Beard's temporary segregation on DC does not fall within the "expected perimeters of the sentence imposed by a court of law." See Sandin, supra, at 485. In the context of administrative confinement, the Eleventh Circuit has held that a relatively short confinement period (2 months in AC - as a result of an allegedly false disciplinary report) was not a deprivation of a constitutionally protected interest, see: Rogers v. Singletary, 142 F.3d 1252, 1253 (11 Cir. 1998) (applying Sandin retroactively).

Therefore, under the circumstances where plaintiff Beard's segregation from the general inmate population on DC status was for 30 days, it is clear under Sandin, and its progeny, see Bass v. Perrin, supra, that given the circumstances in Beard's case, his confinement on DC did not rise to the level of a due process deprivation.

It is therefore apparent that the issuance of the DR on 6/27 by Roberts, as authorized by Greene, did not result in the deprivation of plaintiff Beard's right to due process; and on the

claims related to issuance of the DR, the defendants are entitled to summary judgment.

As to the brief period that Beard spent on AC [from 6/27 to 7/8/08] awaiting review of his prison disciplinary charge, including a brief delay of the DR hearing until 7/8/08, pending mental health approval (see Disciplinary Hearing Work Sheet, DE#38-1 at p.56) it is also apparent that that confinement did not run afoul Sandin and its progeny, and rise to the level of a due process violation.

### III    Conclusion

It is therefore recommended that: 1) as to all claims against all defendants, the motion for summary judgment (DE#38) filed jointly by Greene and Roberts be GRANTED; and 2) this case be closed.

Although, the CM/ECF docket reflects that plaintiff Beard is confined at Union CI (see scanned envelope attached to plaintiff's filing at DE#40), the Florida DOC website shows that he is currently confined at Charlotte CI.  Therefore, in conjunction with the entry of this Report, the Clerk is being instructed to modify the CM/ECF docket, to show that Beard is confined at Charlotte CI. Accordingly, plaintiff's copy of this report will be mailed to him at Charlotte CI, and not Union CI.

Objections to this report may be filed with the District Judge within fourteen days of  receipt of a copy of the report.

Dated: December 29th, 2009.

_____
UNITED STATES MAGISTRATE JUDGE

cc:   Horace Beard, <u>Pro Se</u>
      DC# B796479
      Charlotte Correctional Institution
      33123 Oilwell Road
      Punta Gorda, FL 33955


      Kathleen M. Savor, AAG
      Office of the Attorney General
      110 SE 6 Street, 10th Floor
      Fort Lauderdale, FL 33301


      Ginger L. Barry, Esquire
      BROAD AND CASSEL
      200 Grand Boulevard, Suite 205A
      Destin, FL 32550